Next case up this morning is case number 4, 100059, Illinois Department of Healthcare and Family Services, XRL Cindy Goodrich, for the appellant, Edward Graham, Jr., for the appellee, Ann Chalstrom. Mr. Graham. Thank you, Your Honor. This is a case about a child support computation. Because it's become apparently an issue as to the amount of information that was provided to the court at the commencement of the trial, the parties of the trial presented both parties' testimony about their history together and apart, their employment, their past employments, the amount of earnings that they've had, their current family situations, and their living environments. They also both provided financial affidavits. Mr. Goodrich, or Chris, as I prefer to call him, presented a financial affidavit that included, among other things, a year-end wage and benefit statement from the prior year, a current year-to-date wage and benefit statement through approximately the middle of the year when the trial, just prior to the time that the trial was held. He provided his prior year's income tax return and the schedules that accompanied that, and he also provided a computation of support based on Illinois law as part of the statement of income and expenses that he had, which was computed based on his $80,000 a year salary without considering the fact that he had some substantial unreimbursed employee expenses. And when I say it was computed that way, I mean the income was computed that way and the tax liability was computed that way. We also presented to the court at that time a computation of child support based on Louisiana law, which is the state where Mr. Goodrich resides and has resided for a significant period of time since, in fact, he hasn't resided in the state of Illinois since shortly after the time that the party's marriage dissolved. At the conclusion of the trial, and because the evidence at the trial differed slightly from the financial affidavit information that was provided to the court, and also because the court specifically declined to deviate in its computation of support to accommodate the Louisiana guidelines, the court invited the parties to submit computations of child support that were based on the evidence that was provided to it. The state, as the petitioner in the case did, did not present any other computation other than the one that it presented at the trial that we'll discuss here in a minute. Mr. Goodrich did provide two computations, one based on his current tax status as a married person with deductions claiming personal exemption and dependent deductions for the subject child in this case and also for his current family, and also a computation based as a single taxpayer claiming, I believe, two exemptions, one for the subject child in this case and for himself. The court, using that information and the rest of the information that was They took the year-to-date wage statement that was included as a part of the financial affidavit, and it's a statement that shows a pay date of June 5, 2009, or a pay period that accrued May 18, 2009 through May 24, 2009. Took that particular statement, determined that it covered 21 payroll periods during the course of that year. Counsel, I can't for the life of me figure out why the court is engaged in this 21 versus 23 time periods. Why didn't the court just take the net weekly from the evidence submitted and multiply it by 52? Could have. Why would the court do anything other than that? A complete loss as to why it would not. And as we stated in our Well, I don't even understand the 23 versus 21 argument. So if you can clarify that for me, it would be helpful. And we went through it in our reply, I think, in detail. The guy earns Well, and I did read that. You're basically saying that some of the, I guess two of the payments were from the preceding calendar year. Yeah. If what you do is what the court did, the court at the urging of the state determined that the payroll period ended on May 24, 2009, even though he hadn't been paid on that date for that period. So they took that date, divided the year to date that he had not received as of that date by 21 payroll periods, because the state and used that number to divide all of the year to date taxes and income information that's shown on the wage and benefit statement. That's what the court did. Took that number and added to it the amount of the income tax refund that was identified on the 2008 income tax return, and then computed child support from that by multiplying the number by the net by 20%. Now, that process was incorrect using what you suggested. Had he taken 1538.46 and just taken all those numbers out and used the net, the rest of it, whether he adds back the tax refund or whether he considers unreimbursed employee expenses, whether he considers the parties and computing the taxes or any of those things is a separate issue. But doing what he did, had he just taken that current weekly wage, he would have come up with a different result than the one he did. Now, I think, if I want to presuppose what the judge did under the circumstances, I think what he did was because he knew that Mr. Goodrich had had a bonus in prior years, he assumed, and I think again at the urging of the state, that the amount that was shown for his current wages on that tax return might not have been consistent with what his wages were throughout the year. And that he may have earned more than that as a result of some bonus, and that would have been included in this year-to-date number. The fact of the matter is, if you take the year-to-date number and you divide it by the number of times the guy was paid during the year, you come up with exactly the amount of the current wage. Exactly the same amount. Now, so if what we're going to do is use the number of payroll periods in the year to determine how much child support ought to be paid, then you've got to go by the numbers that are shown on this particular piece of paper, which is where we get to the issue as to whether this is de novo review or whether it is based on a discretion situation. The guy wasn't paid this $35,384.56 on May 24, 2009. On that date, he'd earned two weeks less. That's how much he'd been paid. He wasn't paid the $35,384.56 until June 5. And there's all kinds of ways to compute how many Fridays there were before June 5 up until back to the first of the year. There are all kinds of ways to do it. The guy testified he made $80,000 a year. He got paid weekly every Friday. You can sit down, you can count them up on a calendar. You can take the total number of days that accrued through June 5 and divide it by 7. There's any number of different ways to come up with the number. But the fact of the matter is, there were 23 payroll periods. Now, if you take the number that the judge used under that circumstance to compute the child support, and you extrapolate it out for a year, you come up with him computing child support based on almost $88,000. And the guy's salary is only $80,000. So somewhere in there, there's a phantom $8,000 that the judge is including as a part of the child support computation and assessing as this guy's income. That's not right. And it's a matter of black and white mathematical computation based on a calendar that I think is probably generally accepted in the case of the de novo, because the question is clearly one just of a matter of law. There isn't any way to come up with that same number. And you can justify it, as we mentioned in the reply, all kinds of different ways. You could multiply 1538.46 times 52 and come up with $80,000. You can divide the persuasion or cajoling that I could put forth in the courtroom in front of the judge that was going to convince him that the manner in which he was going about computing the child support was wrong. So he computed it, and he computed it on an amount of money that was about $8,000 too much. Now, my client's year-to-date divided it by 21. Why couldn't he take the May 18th? The pay stub from May 18th through May 24th, which was the most recent pay stub that your client had, look at the net for that week, and then multiply that by 52. How can it get any more simple than that? It can't. Well, I guess that's the question I have to ask opposing counsel. Yeah, it can't get any more simple than that. It adds up to exactly the right number in every category that you want to add. Is there any evidence that perhaps my client had received a bonus during the course of the year, but he testified that he did not receive a bonus that year or the preceding year, and the numbers on his pay stub add that up. He testified he did not. Is there any evidence that he did receive a bonus the preceding year or that he may have been entitled to a bonus that year that was not presented at all? Your Honor, there are two essentially other issues that are presented here that we believe cause an incorrect computation of the child support, and one of them is that the court added back the income tax refund that was shown on the 2008 income tax return to this information that's included the effect of some things that were really secondary to the marriage with the first wife and secondary to the support of this particular child, in that he included the benefit of the new wife and family's tax status, the dependency deductions, and the child tax credit that accrued only because of the fact that there was a new marriage. There is case law in Illinois that indicates specifically that the effect of a new family on child support computation should not be considered, that the new family's income and the benefit that that income derives should not be considered as a part of the child support computation. In this case, it was. We urged the judge not to do that because we felt it was unfair to Mr. Goodrich to have that considered as a part of that computation, and that request again fell on deaf ears. The other thing that occurred in that computation is that Mr. Goodrich on his tax return showed a substantial amount of money that was paid out as unreimbursed employee expenses that he had to pay out of his tax return, and they were specifically identified and itemized on his tax return. How would a court know then whether they were reasonable or necessary without some testimony? Other than just the tax return, probably it wouldn't, but I think the fact that they have presented a tax return, and in just about every child support case that gets presented, the evidence is presented as a tax return and a wage statement. There are a few cases where the parties actually get on the witness stand and testify about those particular issues. Isn't it pretty central to you to make sure that that's established, that those are legitimate deductions from gross income for purposes of child support determination? It would be, except for one thing. When we presented the information to the judge, what we did was we excluded that from the computation of tax. We computed his tax as though those deductions did not exist at all. So we took him completely out of the picture. We computed his tax as though he was a single taxpayer claiming one exemption, and that's the information that we initially provided to the judge. So what we did was we took the tax status that he would have had just because of the fact that he was married and he had one child to support, and we computed his tax based on that and said, this is really what his tax liability ought to be. And off the top of my head, I can't remember exactly what the numbers were, but I believe it came out to be something in the neighborhood of $850, $860 a month. But it correctly identified what child support should be without consideration of that. Now the evidence closed, and the court then invited us to provide other tax refunds. All of a sudden, that deduction became germane, where it hadn't been before. The tax refund included a benefit that accrued because of a $26,000, almost $27,000 deduction on the tax return. I mean, the refund accrued because of that. Now, either that refund is germane to the process here in And if it's not, it shouldn't be considered at all. If it's not considered at all, then the tax liability without that deduction should be considered. And the tax liability without that deduction is obviously significantly greater. So in the alternative to that, because the judge indicated specifically that he was going to The tax return does specifically itemize those things. So we indicated to the judge at that time not only what those were, but also the fact that there seems to be a split in the law between this district and the first district as to what of any of those particular items of unreimbursed expense. Okay. Well, let me stop you there. In your supplemental argument, then, did you explain how these expenses were reasonable and necessary for the production of income? No. I think we assumed that they were, because he'd identified them on his tax return, and if they had not been Well, let me refer to one of the items as transportation of $103,000. Is there anything in the record which would indicate that transportation expense of $1,003 was reasonable and necessary for the production of his income? No. But this court, under its determination in Gay, would have disallowed that anyway, I believe. On transportation? I think on the transportation expense under Gay, they would have disallowed that anyway as a deduction for child support purposes. But, Your Honor, understand where we're coming from here. What we were doing at that phase of the process was computing the tax liability. We do take the position that, later on here, we do take the position that the court should have considered that deduction, that expense, as a factor to reduce net income for child support. But, at least in doing what the judge did here, up until this point in the process, what we're trying to do is to consider whether or not the refund ought to have been added back. Now, that refund accrued because of a very large expense that occurred. So, our position has to be, either we've got to consider the expense as a part of child support computation, or we can't consider the refund as a part of the child support computation. But, they can't have it both ways. Whether it's reasonable and necessary isn't going to come into the picture until the next argument, unfortunately. Because all we're trying to do at this point is just compute tax liability. So, one way or the other, it's got to be. And in our position here, he shouldn't have added it back. If he doesn't add it back, he comes up with a completely different child support obligation. And that child obligation that he's computed it to be also. So, on those bases, his reasoning under the circumstances was just wrong. In the first instance, I think that's a matter of de novo review, because it's a matter of law. In the second instance, obviously it's a matter of discretion, because I think the judge has the right to look at the tax return and decide whether to add the refund back as a factor of over withholding. The evidence that's presented in this case doesn't indicate, the tax return doesn't indicate that it came from over withholding. But, the judge obviously has the discretion to make that decision. In this case, he views the discretion by making the decision to add back that tax refund. Are there any cases, Mr. Graham, that discuss this issue particularly? Like the facts of this case, where you disallow the business expenses that are There is, and it's the one that we cited in the brief. I believe it's Ackerley. And Ackerley makes the statement. Yeah, the statement that Ackerley makes is that, and I don't know whether it was in the brief or it was in the reply. It must have been in the reply. Ackerley makes the statement that there's two ways to compute child support when you're using that kind of documentation. One way is to take the wage and benefit statement, and if there is over withholding, add that over withheld amount back to the income. The other way to do it, and the preferable way to do it when you have the tax returns available, is to use the tax return and compute the actual tax that's paid against the actual income that's earned. That's what's specifically. He just did a combination of both. And we believe that that constitutes an abuse of discretion in this case. The second part of that is, and it is Ackerley at page 391, is that Ackerley further states, further we agree with the respondent that the effect of the respondent's wife's income on status that I've already discussed. So as I mentioned a minute ago, I think the law in Illinois is that you can compute it either way, but the fact that the practicalities of it are that you can either add the refund back and consider what those deductions are when you're computing the child support, or you can do it the other way. Good morning, and may it please the Court. Assistant Attorney General Ann Chalstrom for the Department of the Appellee in this case. The Circuit for three reasons. One, it's calculation of Christopher's year-to-date earnings from employment through May 24, 2009 and over 21 weekly payroll periods is reasonable based on the evidence presented. Two, it properly refused to deduct the unreimbursed business expenses Christopher claimed on his tax return, because no evidence showed that they were, quote, expenditures for repayment of debts under Section 505A3H. Or the second prong, as Your Honors alluded to during the appellant's argument, that they were reasonable and necessary expenses for the production of income. How about uniforms? I mean, why would you buy uniforms except to wear it during work? Well, I think we have to look at what the law is under Gay and its progeny, and the first prong is it's an expenditure for repayment of debts. Those are, under Section 505A3H, the deduction comes in for expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income. So you have two prongs to meet the test. First is the expenditures for repayment of debts. There's no evidence that it's as has been stated by this Court. I just can't think of any other reason you'd buy uniforms except you're required to wear them at work. Even if that meets prong two of the test, you're still not meeting prong one, that it was an expenditure for repayment of a debt at that point. You have to satisfy both prongs under that statute to claim the case. Right. It's Gay, reaffirmed by this district in Meniere and Einstein. And there is contrary law in sister districts? In one, in the first district. The second, third, and fifth have followed this district. I cited those cases in my brief. The first district, Remkes, and recently Baumgartner. But this basically the first district's interpretation of 505A3H reads out that first prong of the test, expenditures for repayment of debts. And that case does a nice job of explaining the statutory construction of that section, that day-to-day ongoing unreimbursed. I don't understand what the expenditure for repayment of debt has to do with whether the, as Jesse Sappleton said, the uniforms were reasonable and necessary for the production of income. Can you explain that to me? Right. What's that have to do with the debt, repayment of the debt, as to whether it should be deducted from the net? Right. Well, that's what Gay and the project said. I know that's what Gay said, but I don't understand why. What's the rationales for that? You've got, well, there are two rationales. First would be the plain language of that first sentence. There must be expenditures for repayment of debts. And then if you look to the last sentence of that payment period. To allow day-to-day ongoing unreimbursed business expenses does not fall into that category. To do so would ignore the for repayment of debts language and also would conflict with that second sentence where only for the period of time that debt repayments are due and that there's a specific repayment schedule may that deduction be taken to statutory language just doesn't allow. Right. You've got these two prongs in construing that entire section together. There are these two rationales why you must have that expenditure for repayment of debt as one of the two prongs to be satisfied. That's correct. Thanks for the clarification. I'll go back to some things the court was asking about regarding this income statement. The circuit court recently calculated Christopher's 2009 income from employment based on the evidence presented to it. And I'm looking at that pay stub. Christopher, to correct counsel, Christopher testified at page 31 of the transcripts that he testified he was paid weekly, not that he was paid every Friday. So May 18th through May 24th, which shows his year-to-date earnings amount. And as the court pointed out, the current amount. The circuit court. Does it show his weekly net? What he netted that week? There's a current amount for salary and then amounts under that subtracting federal withholding, state withholding, and totaling it at the bottom as it does year-to-date. I don't know. The circuit amount for that pay stub was the amount that he, in fact, earned every single week. So I think the proper thing to do is to take what's shown as the year-to-date amount totaled through 09 at that point. The He testified he made $80,000 a year. This is where this all comes into play. The circuit court said, according to this pay stub, that does not reflect that he makes $80,000 a year in 2009. When you take the pay periods, which was the number of weekly pay periods through May 24th, it comes out to about $87,618. So the trial court found that there was a conflicting evidence. So the trial court did not believe his testimony that he made $80,000 a year. Right. The trial court said it considered a pay stub prepared by a neutral third party over the father's testimony. Yes, but that takes into consideration how the court interpreted the third party's pay stub. That's correct. That's correct. So the trial court's interpretation was then that his testimony that he made $80,000 a year was not correct, and that if you take the pay stub and you do the calculation using the 21 weeks, he actually made $87,880 a year. Right, about $87,880 plus a year. That's correct. And that is your argument as well? That's correct, to support the trial court's argument. If there could be any question as to this 21 versus 23 pay period, what Christopher argues on appeal is he was paid on June 5th. That's the pay date reflected on that pay stub. Right. Well, if he was paid weekly, then there are 23 pay periods to June 5th. The problem with this is, and he did note he submitted another pay stub from toward the end of 2008. That pay date, the 2008 pay stub, the pay date, the difference between the number of days between the pay period and the pay date on that pay stub is five days. On the 2009 pay stub, it's something like 12 days. It's like two weeks after. You can't even say that the company had any sort of, just by this, any sort of regular schedule as to when it would issue a paycheck for a particular pay period. If Christopher thought that there could be any question, he should have presented evidence in addition to the pay stub to support the position of this, he was paid 23 times in 2009. He never testified that he was paid 23 times in 2009. Or that the year-to-date amount corresponded to that pay date notation instead of the weekly pay period notation. Or explaining why he was paid on June 5th for the period ending May 24th. Or describing his employer's pay policy. Or, as he, I believe, stated today, that the pay stub included year-to-date amounts earned in 2008 but really paid in 2009. There was no evidence as to any of this. So, I think it's appropriate if the circuit court can read this year-to-date amount as corresponding to the pay period. We know by his testimony he was paid weekly. And here is my most recent pay stub. And the circuit court said, well, I'm taking the year-to-date amount. You're paid weekly. This is through May 24th. There are 21 pay periods. I can figure what your average weekly pay is. We'll multiply that by 52 and get the net income. Less taxes and insurance premium pays to get the net weekly income. Now, to the extent that it could be interpreted two ways, I don't think you could overrule the circuit court and say that there was an abuse of discretion in interpreting this if it's reasonable to interpret each of these ways. Well, my point would be, if he made $88,000 a year, that's really his salary, then the court was right. If he doesn't, then the court was wrong. Do you agree with that? Right, but I think as the evidence was put before the court, what the evidence was, I don't think it can be said that no reasonable person would not take the view adopted by the circuit court in interpreting this pay stub with all of the evidence presented to us. If you do so, you would have to reject his testimony that he made $80,000 a year, then he's being untruthful to the court. That's the only reasonable way you could... Well, the circuit court said... ...determine his salary was $88,000 a year. Right, the circuit court said, you know, this pay stub doesn't show what you're telling us. This pay stub shows something different. That's correct. I'll just touch on the tax refund issue. The circuit court properly included the federal tax refund in determining net income. Only the amount of federal tax actually paid may be deducted when calculating net income for child support purposes under 505A3A. There isn't case law that says the effect of, for example, a new family or business expenses which results in a tax refund should be considered. Neither the taxpayer's intent nor the reason for the tax refund has a bearing on whether the refunded amount is included in the net income calculation. And I would direct the court to the Palaka case out of the 2nd District and this court's Schmid decision. Net income is calculated by the amount of tax a person actually pays. It's calculated based on the number of withholding exemptions the non-custodial parent actually claims, not single plus one as was argued here, but with the new family. Even if that alone decreases the amount of federal tax owed. And Justice Pope, I believe you questioned whether we had a case regarding tax refund kind of commingled with business expenses. And I think Schmid involved a number of deductions that someone, or a number of exemptions someone claimed on their tax returns for the quote new family. And Palaka involved a refund attributable to maintenance paid to the wife. So neither one of those involved the business expenses, but the principle is the same. The reason for the refund has no bearing on whether the refund should be calculated in the net income calculation. And nor need Christopher have some intent to over withhold in an attempt to try and escape additional child support for the purpose of reducing child support. This isn't an intent based determination under this statute. The court has no further questions. I would ask that the circuit court be affirmed. Thank you counsel. Thank you. Rebuttal please. Other than quote over withholding. And the fact of the matter is in this case the client didn't over withhold. He had deductions and business expenses that hadn't accrued in prior years because of his new family and because of his current employment. Why isn't that over withhold? Shouldn't he have anticipated or known that he was going to have these deductions? I don't know how he could have. And he didn't testify that he would have. Over withholding in my world, over withholding accrues because you fill out a W-4 form that says if I'm a married taxpayer and I've got a wife and two kids at home, I'm going to file this as married nine. Right. So that would have been the only way he could have over withheld his claim more than he actually had. Correct. It would be claimed something more than what he had. Which frankly you can do, can't you not? You're entitled to claim as many exemptions as you want. There's a limit I guess on the number that you can claim, but you can claim as many as you want up to that limit. The other statement that counsel made which I think belies the situation is that the court didn't believe that the pay stub showed something different than what the testimony was. Well, if the court believed the pay stub showed something different than what the testimony was, the court had the tax return. And the tax return is the preferable means I think of determining what the child support obligation would have been. Wait a minute. It didn't have the tax return for 2009. No, because it hadn't occurred yet. Right. But it did have it for 2008. But he, what's wrong with using the most current information? I agree. The most current information is the best. But if you're going to use the most current information, let's use it properly. The problem in this case is it's not used properly. This analysis of saying, well, the payroll period ended on May 24, 2009, so that's the way we've got to compute the number of weeks up until that point in the year is frankly ridiculous. The guy got paid on June 5, 2009. June 5 is the day he got paid. The year-to-date numbers that the state used and that the judge used are payments that occurred through June 5, not through May 24. On May 24, he hadn't been paid on June 5. On May 24, he hadn't been paid on May 29. He hadn't been paid on that date either. If he's paid at the rate of $15,3846 a week, which is what the evidence shows he got paid, then his earnings on that date weren't $35,38456. They were $3,400 less than that. They were less than that. So the number the judge used when he divided it by 21 was the wrong number. Either subtract out the wages that hadn't been earned and divide that by 21 if you want, I suppose, or use the right number, just as Pope, as you've indicated. Use the most current information. The wage and benefit statement says what he earned currently. That was as of May 24. As of May 24, he earned $35,000. He had earned, no, he had, well, I don't want to miss a word. He hadn't been paid $35,000. He had accrued the right to be paid $35,000 through May 24. But on May 24, he hadn't been paid that much money. He didn't get paid that much money until June 5. That's the difference between the situation. May 24, he hadn't been paid that. He'd been paid $33,000, $34,000 less than that. So on May 24, if what you want to do is use that year-to-date number like the state did and like the judge did, take those extra earnings that he earned off of there and then divide it by 21 to come up with the year-to-date number. Now, the fact of the matter is you come up with exactly the same number, 15,3846. When you do that, you come up with exactly the same number, which tells us that he gets paid exactly the same amount every week. And if you're not going to do that, use the most current information available. Use the $35,000 through that payday and divide that by the number of times that the guy was paid from January 1 until that date, which happens to have been 23. And what you find is that he earned, at that point, now I'm not saying he's not going to get a raise tomorrow or that he didn't get a raise six weeks later, but I don't know anything about that. And there was no testimony about it. But through that date, the guy was earning an annual salary of $80,000 a year, and the judge computed his child support as though he made $88,000. It's just wrong. As Justice Turner, as you said, it's wrong. I don't know if I said it was wrong. I said if he did it that way. Yes. If he made $80,000 a year and he did child support, if you're going to apply the 20%, then it would have been wrong. Right. And I believe that what you're going to find when you go back and review this, and I think you probably already have, is you're going to see that the judge was wrong. And given the situation that I've been through in this case, until this court tells the judge that he was wrong when he did it this way, he's going to continue to do it this way. And that can't be the case. Now, this guy makes $80,000 a year, and that makes a substantial difference in his child support. If you have a guy that makes $160,000 a year, it's going to make twice as big a difference in his child support. Now, maybe the guy that makes $160,000 is going to show up with a lawyer or be astute enough to figure that out. Maybe the guy that makes $80,000 is going to be astute enough to show up with a lawyer and figure it out. Counsel, you're out of time. Thank you. Thank you, counsel. The case is submitted. The court will stay in recess.